**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GHAZI ALMASHLEH,** )<br>        Plaintiff )<br> )<br>    v. )<br> )<br>**UNITED STATES OF AMERICA, et al.,** )<br>        Defendants. ) | **C.A. No. 06-106 Erie**<br><br>**District Judge McLaughlin**<br>**Magistrate Judge Baxter** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' partial motion to dismiss or, in the alternative, partial motion for summary judgment [Document # 25], be granted.

**II.    REPORT**

**A.    Procedural History**

On May 8, 2006, Plaintiff Ghazi Almashleh, an inmate incarcerated at the Federal Correctional Institution at McKean, Pennsylvania ("FCI-McKean"), filed this *pro se* civil rights action pursuant to Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671, et seq. Named as Defendants are: United States of America ("United States"); James F. Sherman, Warden at FCI McKean ("Sherman"); Herbert Beam, M.D., a physician at FCI-McKean ("Beam"); Charles Montgomery, a Physician's Assistant at FCI-McKean ("Montgomery"); Dennis Olson, M.D., Clinical Director at FCI-McKean ("Olson"); Mark Welch, M.D., a physician at the Bradford Regional Medical Center ("Welch"); N. Nelson, a licensed practical nurse at FCI-McKean ("Nelson"); Judy Glenn, a medical employee at FCI-McKean ("Glenn"); Violet Geza, a pharmacist at FCI-McKean ("Geza"); Steven Labrozzi, a pharmacist at FCI-McKean ("Labrozzi"); Rodney Smith, Health Services Administrator at FCI-McKean ("Smith"); and unnamed Defendants John and Jane Doe, who are identified as medical staff personnel at FCI-

McKean ("Doe Defendants").

Plaintiff alleges that: (i) his rights under the eighth amendment to the United States Constitution have been violated as a result of the individual Defendants' deliberate indifference to his serious medical needs (Complaint at ¶¶ 61-65; (ii) Defendants were medically negligent in their treatment of his fractured nose (Id.); and (iii) Defendant Sherman violated his due process rights under the fifth amendment to the United States Constitution by "intentionally misrepresenting the seriousness of Plaintiff's medical condition in his response to Plaintiff's grievance." (Complaint at ¶ 66). As a result of these claims, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

Defendants have filed a partial motion to dismiss, or in the alternative, partial motion for summary judgment [Document # 25], arguing, *inter alia*, that: (i) Plaintiff has failed to state a Bivens claim upon which relief may be granted with regard to Defendants' treatment of his fractured nose; (ii) Plaintiff's FTCA claim against the individual Defendants should be dismissed because they are not proper parties to such a claim; (iii) the United States cannot be held liable for the alleged negligence of Defendant Welch because he is a private medical practitioner not employed by the United States; and (iv) the individual Defendants are entitled to qualified immunity.[1] Plaintiff has filed a brief in opposition to Defendants' motion essentially restating the allegations of his Complaint. [Document # 29]. This matter is now ripe for consideration.

**B.     Factual History**

On June 27, 2003, Plaintiff was designated to FCI-McKean to serve 108 months of imprisonment, followed by five (5) years of supervised release. (Document # 26, Defendants' Brief, Exhibit 1a at p. 3). Assuming he receives all Good Conduct Time available, Plaintiff's projected release date is November 7, 2008. (Id. at p. 4).

---

[1] Defendants have failed to seek dismissal of Plaintiff's Fifth Amendment Due Process claim against Defendant Sherman.

Prior to his sentencing on April 21, 2003, Plaintiff was housed at the Metropolitan Detention Center in Los Angeles, California, where he was assaulted by another inmate and allegedly sustained a broken nose. (Complaint at ¶ 15).[2] The sentencing judge noticed the condition of Plaintiff's nose during sentencing and, as part of the sentencing order, ordered that Plaintiff "be allowed to see a medical doctor as soon as possible for treatment of his broken nose." (Complaint, Exhibit J at p. 2). Nevertheless, Plaintiff did not receive any treatment for his broken nose prior to his designation to FCI-McKean. (Complaint at ¶¶ 18-23).

Upon his arrival at FCI-McKean, Plaintiff underwent a medical intake screening, during which Plaintiff advised Defendant Nelson of his sentencing judge's order that he receive treatment for his broken nose. (Complaint at ¶ 24 and Exhibit A). Upon examination, Defendant Nelson noted that Plaintiff's nose was "visibly out of alignment." (Complaint, Exhibit A). A few days later, on July 2, 2003, Plaintiff was examined by Defendant Beam, who noted that Plaintiff had a deviated septum and a history of trouble breathing through his right nostril. (Complaint, Exhibit B at p. 1). As a result, Plaintiff was prescribed Nasalide, an anti-inflammatory steroid nasal spray used for relief of hay fever, to treat his nasal congestion. (See Declaration of Dennis Olson, M.D. ("Olson Declaration"), attached as Exhibit 3 to Document # 26, Defendants' Brief, at ¶ 7).

On July 24, 2003, Defendant Olson ordered a nasal bone x-ray, which was conducted by Defendant Welch, an independent radiologist, on August 7, 2003. (Olson Declaration at ¶¶ 8-9). Dr. Welch reported that the x-ray revealed an old non-acute nasal bone fracture, with no bony destructive process noted. (Id. at ¶ 9).

On September 30, 2003, Plaintiff was seen by Defendant Beam in FCI-McKean's Chronic Care Clinic, complaining about right sinus pain, sinus congestion, and pain around his right eye. (Olson Declaration at ¶ 10). On examination, Defendant Beam noted that Plaintiff's

---

[2] According to a medical history form that was completed by Plaintiff at the Metropolitan Correctional Center in Chicago, Illinois, on December 27, 2000, Plaintiff previously suffered a fractured nose in 1987. (See Olson Declaration at ¶ 3b).

right nostril was blocked greater than the left side, with increased edema. (Id.). Defendant Beam noted that a referral for nasal repair surgery would be submitted to FCI-McKean's Utilization Review Committee ("URC"). (Id.).

On October 9, 2003, the URC reviewed Plaintiff's case and determined that surgical repair of Plaintiff's nose was not medically necessary. (Id. at ¶ 11). In particular, the URC found that the reduced airflow through Plaintiff's right nostril was compensated for by the airflow in his left nostril and, thus, Plaintiff's total airflow was unaffected by his nasal condition; there was no full or bilateral obstruction; and the risks of surgery included massive blood loss, infection, or puncture of the nasal plate, which could result in either brain injury or death. As a result, the URC concluded that the risks of surgery outweighed any benefits Plaintiff might receive from the surgery, and that the surgery would be unlikely to provide long term relief from Plaintiff's nasal congestion and breathing difficulties. (Id. at ¶¶ 23-26).

Thereafter, in accordance with the URC's recommendation, Plaintiff continued to receive conservative treatment with prescription medications. (Id. at ¶ 27).

### C.     Standards of Review
#### 1.     Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. Neitzke v. Williams, 490 U.S. 319

(1989); Scheuer v. Rhodes, 419 U.S. 232 (1974). However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997). Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted. See Swierkiewicz.

### 2.      Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

5

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 3.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared

6

by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### D.    Discussion
#### 1.    Eighth Amendment Claim

Plaintiff claims that the individual Defendants acted with deliberate indifference in violation of his Eighth Amendment rights by failing to provide "proper medical treatment for his fractured nose." (Complaint at ¶¶ 61-65). In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[3] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d

---

[3] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

In this case, Plaintiff's primary complaint is that the individual Defendants failed to "provide for the surgical repair of [his] fractured nose." (Complaint at ¶¶ 54-55, 59-61). As Plaintiff's medical record indicates, however, surgical intervention was appropriately considered and found to be medically unnecessary, since the total airflow through Plaintiff's nose was unaffected by the nasal fracture, and the risks of surgery outweighed any benefit that may have been achieved. The fact that Defendants gave due consideration to the pros and cons of performing nasal surgery on Plaintiff dispels Plaintiff's claim that they were deliberately indifferent to his perceived need for surgery to correct his fractured nose. Moreover, Defendants continued to conservatively treat Plaintiff's breathing difficulties and nasal congestion with prescription medications, including nasal sprays. Although Plaintiff may disagree with this course of treatment, a prisoner's disagreement with a course of treatment does not sustain a cognizable constitutional claim. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976).

Based on the foregoing, this Court concludes that Plaintiff's Eighth Amendment deliberate indifference claims against the individual Defendants should be dismissed, as a matter of law.

### 2. FTCA Claim vs. Individual Defendants

In their motion, the individual Defendants argue that Plaintiff cannot proceed with his FTCA claim against them because they are not proper parties under the FTCA. The Court agrees. Although the FTCA provides a limited waiver of sovereign immunity for certain torts committed by federal employees, the United States is the only proper defendant in an action brought under the FTCA. 28 U.S.C. § 2679; see, e.g., Good v. Ohio Edison Co., 149 F.3d

8

413, 418 (6th Cir. 1998); Kennedy v. United States Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998); Mars v. Hanberry, 752 F.2d 254, 255 (6th Cir. 1985). Thus, Plaintiff's FTCA claim against the individual Defendants, alleging medical negligence related to the treatment of his fractured nose, should be dismissed.

### 3. Defendant Welch

Defendants argue that the United States cannot be held liable for the alleged negligence of Defendant Welch because he is a private medical practitioner not employed by the United States. In support of this argument, Defendants have submitted the Declarations of Defendant Olson and Monika Recktenwald, Executive Assistant/Legal Liaison at FCI-McKean, both of whom certify that Defendant Welch was not employed by FCI-McKean during the period of time he conducted and reported the results of Plaintiff's nasal bone x-ray. (Olson Declaration at ¶ 30; Declaration of Monika Recktenwald ("Recktenwald Declaration"), attached as Exhibit 5 to Document # 26, Defendants' Brief, at ¶ 5). In particular, Ms. Recktenwald declares that:

> Also, on November 3, 2006, I verified that Mark Welch, M.D., has never been employed at FCI McKean. I confirmed that in August and September 2003, Dr. Welch worked at the Bradford Regional Medical Center (BRMC), as a Radiologist. I also verified that in August and September 2003, FCI McKean paid BRMC to read the medical x-ray films taken at FCI McKean, and to provide x-ray reports. It appears that the x-ray report dated September 8, 2003, written by Dr. Welch, was provided pursuant to the above-described arrangement between FCI McKean and BRMC. Absent from this arrangement between FCI McKean and BRMC was any direction from FCI McKean to interpret the x-rays in any manner than was not clinically-appropriate.

(Recktenwald Declaration at ¶ 5).

It is apparent from the foregoing declaration that Defendant Welch was acting as an independent contractor at all times relevant to this case. While the FTCA waives the United States' sovereign immunity for suits arising from any injury "caused by the negligent or wrongful act or omission [of any] of [its] employee[s] ... while acting within the scope of his office or employment," the FTCA's definition of "employee" specifically excludes "any contractor with the United States." 28 U.S.C. §§ 1346(b)(1), 2671. The Supreme Court has interpreted this provision to expressly preclude the United States from being held liable for the

9

negligence of its independent contractors.  United States v. Orleans, 425 U.S. 807, 814 (1976); Logue v. United States, 412 U.S. 521, 528 (1973).  See, also, Roditis v. United States,122 F.3d 108, 111 (2d Cir. 1997); Dyer v. United States, 96 F.Supp.2d 725, 732 (E.D.Tenn. 2000).  Since a claim against the government for the negligence of one of its independent contractors "falls outside the FTCA's provisions, the claim is barred by the Government's sovereign immunity."  Berghoff v. United States, 737 F.Supp. 199, 201 (S.D.N.Y. 1989).

Thus, to the extent Plaintiff claims that any failure to properly treat his nose is attributable to the negligence of Defendant Welch, such portion of Plaintiff's FTCA claim against the United States should be dismissed.

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' partial motion to dismiss or, in the alternative, partial motion for summary judgment [Document # 25], be granted, and the following claims should be dismissed from this case:

1. Plaintiff's Eighth Amendment Bivens claims against the individual Defendants;

2. Plaintiff's FTCA claims against the individual Defendants; and

3. Plaintiff's FTCA claim against the United States to the extent that Plaintiff claims medical negligence on the part of Defendant Welch.

As a result, the only claims that should remain pending in this case are:  (i) Plaintiff's FTCA claim against the United States, excluding Plaintiff's claims of medical negligence against Defendant Welch; and (ii) Plaintiff's Fifth Amendment Due Process claim against Defendant Sherman.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C)), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to

respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

S/Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
Chief U.S. Magistrate Judge

Dated: April 19, 2007

cc: The Honorable Sean J. McLaughlin
    United States District Judge